IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 4:22-cv-00046-D

| | |
|---|---|
| **JEREMY SOUTHERLAND,** individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**PIRATE PIZZA, INC.,** and **ALLEN LYLE,**<br><br>Defendants. | **JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** |

Plaintiff, Jeremy Southerland, individually and on behalf of similarly situated persons ("Plaintiff") and Defendants, Pirate Pizza, Inc. and Allen Lyle ("Defendants") (collectively, the "Parties"), by and through their undersigned counsel of record, hereby request preliminary approval of the Parties' Settlement and Release Agreement ("Settlement Agreement") and Notice of Class and Collective Action Settlement ("Class Notice"), which are being submitted to the Court under seal.[1]

**I.    INTRODUCTION**

Plaintiff Jeremy Southerland filed this class and collective action against Defendants in this Court and alleged that Defendants failed to properly reimburse delivery drivers for expenses, violating their minimum wage obligations. Subject to Court approval, the Parties have agreed to settle these claims on a class and collective action basis, pursuant to Federal Rule of Civil Procedure 23 and Section 216(b) of the Fair Labor Standards Act ("FLSA"), for the Total Settlement Amount listed in the Settlement Agreement, inclusive of attorney's fees, litigation

---

[1] Pursuant to the terms of the Settlement Agreement, Defendants filed a motion to file the Settlement Agreement, Class Notice under seal. Dkt. No. 21.

costs, claims administration expenses, and Plaintiff's service award. The settlement is the result of extensive negotiations between the Parties and was informed by the collective experience of Counsel for the Parties, who have extensive experience with hybrid FLSA and Rule 23 cases. *See* Serrano Declaration.

As discussed herein, the settlement meets all the criteria for preliminary approval. To effectuate the settlement and distribute funds to settlement class members, the Parties request that the Court:

(1) grant Plaintiff leave to file an Amended Complaint adding class claims under North Carolina state law (a true and correct copy of Plaintiff's proposed First Amended Complaint is attached hereto as an Exhibit),

(2) conditionally certifies a FLSA collective action pursuant to Section 216, as set forth below;

(3) certifies a North Carolina class action pursuant to Rule 23, for settlement purposes, as set forth below;

(4) appoints Plaintiff Jeremy Southerland as Class Representative and appoints Forester Haynie PLLC and The Law Offices of Jason E. Taylor P.C. as Class Counsel;

(5) preliminarily finds that the Parties' settlement appears to be fair, reasonable, and adequate as to the members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of class settlement by this Court;

(6) grants preliminary approval of the settlement;

(7) approves as to form and content the Parties' proposed Class Notice and process for requesting exclusion from the settlement as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(8) directs the mailing of the Class Notice by first-class mail to the Settlement Class Members; and

(9) schedules a final approval hearing at least 100 days following the Court's Order.

Pursuant to the terms of the Settlement Agreement, the Parties' agreed-upon Settlement Agreement and the Class Notice are being contemporaneously filed with Defendants' Unopposed Motion to Seal (Dkt. No. 21). The settlement meets the standards for approval and the Motion should be granted.

## II. FACTS AND PROCEDURAL HISTORY

Defendants previously owned and operated a chain of Domino's pizza stores located throughout North Carolina until April 18, 2022 when the stores were sold. On March 29, 2021, Plaintiff filed suit against Defendants alleging minimum wage violations resulting from under-reimbursed vehicle costs incurred on the job in violation of the FLSA, 29 U.S.C. § 201 *et seq.*[2] Plaintiff asserted those claims individually and on behalf of similarly situated delivery drivers currently and formerly employed by Defendants. Plaintiff alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing the workers' net wages below the federal minimum wage rate (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff alleged that Defendants applied the same reimbursement formula and rate to all of their delivery drivers during the recovery period.

Counsel for the Parties have previously represented Domino's franchisees and delivery drivers including in *Nooney v. Farrior Corporation., et al*,[3] where the Honorable Judge James C. Dever III of the Eastern District of North Carolina recently granted final approval of a settlement

---

[2] As part of the settlement and pursuant to Rule 15, the Parties have agreed that Plaintiff will file an Amended Complaint to add class claims under North Carolina state law. Plaintiff has incorporated this request for leave to file this amendment with this Motion and attached the proposed First Amended Complaint as an Exhibit.
[3] Case No. 5:21-cv-00146 (E.D. NC.).

covering similar claims and tracking a similar structure as proposed here.[4] Based on this experience, counsel negotiated an early and efficient resolution structure they believe is in the Parties' interest and serves the additional and ongoing interest of judicial economy.

The Parties discussed disclosure of data needed to evaluate liability and damages. Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations. The Parties explored the need for mediation, going so far as to schedule an in-person mediation with experienced mediator Michael Russel. However, based on the projected damage calculations, and in order to maximize available funds to the Class, the Parties instead negotiated extensively and were able to efficiently resolve the claims at issue without the need for mediation.

Defendants denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further deny that, for any purpose other than settling this matter, this action is appropriate for class or collective treatment. Plaintiff, on the other hand, asserts that Defendants failed to comply with federal and state minimum wage requirements embodied in the FLSA and applicable North Carolina state wage laws. Class Counsel understands Defendants' position and defenses, but believes Plaintiff, individually and on behalf of the Class, could ultimately succeed at trial on the basis of common proof. All Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation, which motivated settlement. The attorneys who negotiated on behalf of the Parties are experienced litigators, and they vigorously represented their clients' respective interests. *See* Serrano Declaration. The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously disputed legal and factual issues. It considers

---

[4] See also *Monarch and Breit v. GBR Pizza, Inc., et al*, Case No. 5:19-cv-00257 (E.D. NC.) (Court granted final approval of a settlement covering similar claims and tracking a similar structure as proposed here).

the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals.

**III.    KEY SETTLEMENT TERMS**

The Settlement Agreement defines the Settlement Class as:

*All persons who worked as a delivery driver for Defendants between September 19, 2019, through the April 18, 2022.*

The Parties agreed to settle all putative class members' wage and hour claims by Defendants establishing a settlement fund inclusive of payments to the putative class, attorneys' fees, litigation costs, administration costs and a modest service award. All class members who do not timely opt-out, will receive their pro rata share of the Net Settlement Fund, with a minimum payment of thirty dollars ($30.00). The settlement funds will be distributed to class members who do not submit a request for exclusion, based on the following equitable formula:

- For each Settlement Class Member, the total number of his/her recorded miles making deliveries for Defendants during the three-year period preceding the date the Court grants preliminary approval of the Agreement shall be his/her "Individual Miles."  The aggregate of all Individual Miles among all Settlement Class Members shall be the "Class Miles."

- Each Settlement Class Member's Individual Miles shall be divided by the Class Miles to obtain his/her "Payment Ratio."

- Each Settlement Class Member's Payment Ratio shall be multiplied by the Net Settlement Amount to arrive at his/her Potential Settlement Payment.

All settlement payments will be treated as non-taxable payments in reimbursement for incurred expenses.

The release binding Class Members who do not opt out is defined below:

> Upon the Effective Date of the Settlement, the Class Representative and all Participating Class Members who cash or otherwise negotiate their settlement check will release and forever discharge Defendants and the Released Parties from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period, including claims arising out of, based on, or encompassed by facts asserted in the action, arising under the FLSA, North Carolina wage and hour laws, or any similar federal, state, municipal, or local laws, such as mileage reimbursement claims; minimum wage and overtime; off-the-clock claims; meal and rest break claims; and dual jobs claims. Participating Class Members who do not cash or otherwise negotiate their settlement check will release and forever discharge Defendants and the Released Parties from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, for the Release Period, including claims arising out of, based on, or encompassed by facts asserted in the action, arising under North Carolina wage and hour laws, or any similar state, municipal, or local laws, such as mileage reimbursement claims; minimum wage and overtime; off-the-clock claims; meal and rest break claims; and dual jobs claims. Without limiting the generality of the foregoing, the claim preclusion effect of this Settlement, and the judgment thereon, for *res judicata* purposes shall be co-extensive with this release of claims (collectively, the "Released Claims").

Based on service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, Named Plaintiff seeks a modest service award, subject to Court approval.

Subject to this Court's approval, Plaintiff's Counsel will seek fees equal to one-third (1/3) of the total settlement and actual litigation costs. Defendants will not oppose or object to this request for attorneys' fees and costs.

The Parties have selected CAC Services Group to serve as the settlement administrator, whose fees will be paid from the settlement amount.

A notice of collective action settlement (the "Notice") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement. The Parties' proposed Notice should be approved as it explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each delivery driver's right to object to the settlement or to exclude themselves from the settlement.

The Settlement Administrator will send a Notice to each class member and each of them will have 50 days after mailing of the notice to submit a request for exclusion and 50 days after mailing of the notice to file objections. Class members will also have the opportunity to appear at the final approval hearing to be set by the Court.

IV. **ARGUMENT**

   A. **The Court Should Preliminarily Approve the Settlement**

Federal Rule of Civil Procedure 23(e) provides that a class action can be settled only with court approval. "In approving proposed class action settlements pursuant to Federal Rule of Civil Procedure 23(e), courts generally employ a two-step approach." *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, *2 (E.D.N.C. Nov. 9, 2011) (internal citations omitted). "First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement....Second, after preliminary approval is granted and the class notified, the court holds a "fairness" hearing, where all interested parties may be heard on the proposed settlement....After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id.* "The Fourth Circuit Court of Appeals applies a two-part test to determine whether a proposed settlement conforms to the requirements of Federal Rule of Civil Procedure 23(e) by considering

(1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient." *Id.* at *3.

Preliminary approval of a class action settlement is thus a provisional step. At the preliminary approval stage, the Court's review is not exacting. Moreover, in evaluating a proposed settlement, "[the Court's] role at this stage of the proceeding is not to evaluate the merits of the litigation, since this would contravene the parties' decision to 'waive their right to litigate the issues involved in the case and thus save themselves the time, and the inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Applying these standards, preliminary approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Fairly and Honestly Negotiated

"In order to determine whether a proposed settlement is fair to the parties, courts consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the type of case at issue." *McLaurin*, 2011 WL 13146422 at *3 (citing *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991)). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *In re Jiffy Lube Securities Litigation,* 927 F.2d at 158.

Here, the Parties are represented by counsel with considerable experience handling the type of wage and hour claims alleged in the action. *See* Serrano Declaration. The Parties investigated the merits of the claims and Defendants' defenses and engaged in arms-length negotiations.[5] The Parties debated the claims and exchanged informal discovery and information in order to evaluate

---

[5] *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("[I]n general, a settlement arrived at after arm's length bargaining may be presumed to be fair.").

the potential claims. Defendants produced all necessary class-wide data in order for Plaintiff to calculate class-wide potential damages. After extensively engaging in settlement discussions over the course of one month, the Parties' counsel negotiated the full settlement terms at arm's-length. The settlement was honestly and fairly negotiated, and not the product of collusion. All Parties were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the course of the negotiations. As such, this Court should find the settlement was reached fairly between the Parties. *See In re Jiffy Lube*, 927 F.2d at 159 (affirming class action settlement as fair even though settled early in litigation prior to formal discovery because of the parties' informal discovery and experience of counsel); *see also Nooney v. Farrior Corporation, et al.*, Case No. 5:21-cv-00146 (E.D. NC.) (Hybrid FLSA and Rule 23 settlement finally approved by the Honorable Judge Dover III for similar claims and structure); *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D.N.C.) (Hybrid FLSA and Rule 23 settlement finally approved for similar claims and structure); *Marnoch and Breit v. GBR Pizza, Inc., et al*, Case 5:19-cv-257 (E.D.N.C.) (Hybrid FLSA and Rule 23 settlement finally approved for similar claims and structure); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.) (FLSA and Rule 23 settlement preliminarily approved for similar claims and structure).

    **2.    Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of This Action In Doubt**

Plaintiff believes that the claims are strong but recognizes that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that he will prevail in demonstrating that Class Members were not properly reimbursed for miles they incurred in their own vehicles on Defendants' behalf. Defendants, however, contend that they fully complied with applicable minimum wage requirements and believe numerous factors could preclude class-wide treatment. Defendants deny all liability and believe that their defenses are strong and that the Class

Members were properly reimbursed for their expenses. Nonetheless, both Parties recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period for willful violations under the FLSA applies, or whether the two-year period for non-willful violations under the FLSA, or the two-year period under North Carolina's Wage and Hour Act would be applicable in this matter. Second, the Parties dispute whether this case could be tried on a class-wide basis. Finally, the Parties dispute the applicability of potential penalties, including liquidated damages. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this also weighs in favor of approval of the Settlement. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 3. The Class Recovery is Substantial and is Adequate

Approval of the settlement is appropriate in light of the adequacy factors: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; and (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment. *See In re Jiffy Lube*, 927 F.2d at 159.

Under the Settlement, class members will receive a significant recovery, especially in light of Defendants' defenses that its reimbursement model was adequate under the wage and hour laws prior to settlement. The allocation model also ensures each class member receives a fair and adequate amount based on the miles actually driven by them.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. The Parties would each need to hire experts to review the voluminous records of reimbursements and expenses incurred by class members driving numerous different models of cars. These experts will then need to opine as to what the "reasonable" reimbursement rate is for class members. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, experts and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for Settlement Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Settlement Class Members to recover. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved.

### B. The Settlement Class Meets the Requirements of Rule 23(a) for Settlement Purposes.[6]

#### 1. Numerosity

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 459 (4th Cir. 2003) (citing Fed. R. Civ. P. 23(a)(1)). In the instant case, the Settlement Class consists of more than 200 individuals, which satisfies the numerosity requirement of Rule 23(a)(1). *See, e.g. Thomas v. Louisiana-Pacific Corp.,* 246 F.R.D. 505, 509 (D.S.C. 2007) (approving class action with 130 potential class members).

---

[6] For purposes of settlement only, Defendants have agreed not to contest the statements made in the Parties' Joint Motion for Preliminary Approval. However, Defendants do not waive, and expressly reserve, any defenses or denials that class certification is proper in this case should the Court not approve the settlement, or the settlement not be perfected.

## 2. Commonality

Commonality is met when the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *Gunnells,* 348 F.3d at 459 (4th Cir. 2003). Even individual damage determinations do not defeat commonality, typicality or predominance. *Id*. at 427-28. "However, [Rule 23] does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Beaulieu v. EQ indus. Services, Inc.*, 2009 WL 2208131, *11 (E.D.N.C. July 22, 2009) (internal citations and quotations omitted). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendants include:

   a. Whether the class members' vehicle-related expenses resulted in payment below minimum wage;

   b. Whether Defendants took improper deductions in violation of the NCWHA; and

   c. Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages; and

   d. Whether Plaintiff and the class members were paid all wages owed at the time they were due.

Thus, for settlement purposes, Plaintiff asserts that the proposed class members share sufficient commonality to satisfy Rule 23(a)(2).

## 3. Typicality

To satisfy the typicality requirement Rule 23(a)(3), Plaintiff must show that the claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982). "[T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Beaulieu*, 2009 WL 2208131 at *13 (internal citations and quotations omitted).

Plaintiff alleges the exact claims as the class that they were not paid for all reimbursement expenses in a manner compliant with federal and state law. As a result, Plaintiff claims that he and the other putative class members are owed additional compensation. Plaintiff contends that the legal standards and requirements for proving the subject wage and hour claims under state law are the same for Plaintiff's individual claims and those of all of the putative class members. Thus, for settlement purposes, Plaintiff asserts that his claims are sufficiently typical of the putative class to satisfy Rule 23(a)(3).

### 4. Adequacy

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To determine adequacy, courts typically look to two criteria: 1) that "class representatives" are "part of the same class and possess the same interest and suffer the same injury as the class members" and 2) that no "potential conflict existed" among class members. *Gunnells,* 348 F.3d at 425 (citing *Broussard v. Meineke,* 155 F.3d 331, 337-38 (4th Cir. 1998). Plaintiff asserts that neither he nor his counsel have any interests antagonistic to those of the putative class members. Plaintiff has communicated regularly with Class Counsel. Plaintiff, through counsel, has prosecuted this action vigorously on behalf of himself and the putative class. Plaintiff contends his counsel has considerable experience as lead counsel in class action wage and hour litigation. Thus, for settlement purposes, Plaintiff asserts that he has established that Plaintiff and Class Counsel will fairly and adequately protect the interests of the putative class to satisfy Rule 23(a)(4).

### C. **The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.**

Plaintiff asserts that certification is proper under Rule 23(b)(3) for settlement purposes. Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court must determine

whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

1. **Predominance**

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id.* As explained above, Plaintiff asserts that the common nucleus of facts in the present case derives from the alleged practices that excluded certain incurred expenses from the Plaintiff's reimbursement pay. Based on these alleged violations of law, Plaintiff alleges that the Settlement Class Members would be entitled to the same legal remedies. Accordingly, Plaintiff asserts that preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper. Additionally, Plaintiff contends that class certification in this case serves the judicial economy function of Rule 23 class actions.

2. **Superiority**

Plaintiff alleges that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Gunnells,* 348 F.3d at 426 ("In the absence of class certification, very few claims would be brought against [the defendant], making the adjudication of [the] matter through a class action superior to no adjudication of the matter at all. Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action"). Plaintiff asserts that the alternative method of resolution could be hundreds of individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem*, 521 U.S. at 620 (1997). In light of these considerations, Plaintiff asserts that preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

D. **Conditional Certification of the FLSA Collective Action**

Conditional certification of the FLSA class is warranted for many of the same reasons detailed above regarding certification under Rule 23's more stringent certification standards. Plaintiff alleges that all class members performed the same primary job duty of delivering pizzas and other food to Defendants' customers using their personal vehicles, they were compensated by similar hourly pay rates, drove similar delivery distances, Defendants reimbursed them with the same or comparable rate per mile and/or delivery, and their claims are based on the same legal theory. Plaintiff asserts that employees may recover vehicle costs when the employer's estimation of such costs is unreasonable, and the shortfall results in minimum wage deficits. Alternatively, Plaintiff asserts that Defendants must either track and reimburse actual vehicle costs or reimburse at the IRS rate. Either way, Plaintiffs are similarly-situated and the same legal standard will apply class-wide. Plaintiff asserts that this is sufficient to warrant certification of Plaintiff's FLSA claim for settlement purposes. *See e.g.*, 29 U.S.C. § 216(b) (FLSA certification warranted where plaintiff demonstrates he and putative class members are "similarly situated"); *Neira v. Goodfella's Pizza, Inc. et al*, Case No. 1:19-cv-280 (W.D.N.C.) (Dkt. 19) (conditionally certifying analogous claims by Domino's pizza delivery drivers on May 20, 2020); *Otis v. TAH Pizza, Inc. et al.,* Case 2:18-cv-00111 (E.D. TN) (approving of FLSA certification of similar claims for settlement purposes).

The Parties will move for final approval of the FLSA settlement contemporaneously with seeking final approval of the Rule 23 settlement classes.

E. **The Court Should Approve the Proposed Notice**

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members. Fed. R. Civ. P. 23(e)(1)). Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *Id*. These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A Rule 23(e) settlement notice should inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002).

The proposed Notice satisfies all these elements. First, it explains the nature of the action. Second, the Notice apprises Settlement Class Members of the pendency of the settlement and informs them of material settlement terms. The Notice explains that Class Members who "do nothing" will receive a minimum payment and remain in the Settlement Class and be bound by the settlement and all orders and judgments. The Notice describes how to object to the settlement, informs Class Members that they will receive a share of the Settlement Amount if they do not request exclusion and explains factors that will be applied to account for their precise recovery. *McLaurin*, 2011 WL 13146422 at *5 (While Rule 23 does not spell out required contents of a settlement notice, the notice should "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the]

proceedings"). Here, class members are provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense. Class Members will have a reasonable amount of time, 50 days from the date the notice is mailed, to file an objection or to request exclusion from the settlement.

The Parties will file a Joint Motion for Final Approval of the Settlement at least ten (10) calendar days prior to the Final Fairness Hearing. The Parties also request the Court to set a final fairness hearing so that the notice can inform Class Members of the date and location of that hearing. To accommodate the notice period and in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d), the Parties request a date at least 100 days after the Court's order preliminarily approving the settlement.

## V. CONCLUSION

The proposed Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation.

For the foregoing reasons, the Parties respectfully request that the Court grant this Motion and issue an Order that:

(a)  grants Plaintiff leave to file and Amended Complaint adding class claims under North Carolina state law;

(b)  conditionally certifies a Fair Labor Standards Act ("FLSA") collective action pursuant to Section 216, as set forth above;

(c)  certifies a North Carolina class action pursuant to Federal Rule 23, for purposes of settlement, as set forth above;

(d)  appoints Plaintiff Jeremy Southerland as Class Representative and appoints

Forester Haynie PLLC and The Law Offices of Jason E. Taylor P.C. as Class Counsel;

(e) preliminarily finds that the Parties' settlement appears to be fair, reasonable, and adequate as to the members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of class settlement by this Court;

(f) grants preliminary approval of the settlement;

(g) approves as to form and content the Parties' proposed Class Notice and process for requesting exclusion from the settlement as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(h) directs the mailing of the Notice Form by first-class mail to the Settlement Class Members; and

(i) schedules a final approval hearing at least 100 days following the Court's Order.

Respectfully submitted,

*/s/ Katherine Serrano*
Katherine Serrano*
**FORESTER HAYNIE PLLC**
400 N. St. Paul St., Ste 700
Dallas, Texas 75201
Phone: (214) 210-2100
kserrano@foresterhaynie.com
*Special appearance entered*

*/s/ Jacob J. Modla*
**Jacob J. Modla** (Bar No: 17534)
The Law Offices of Jason E. Taylor P.C.
115 Elk Avenue
Rock Hill, South Carolina 29730
Phone: (803) 328-0898
jmodla@jasonetaylor.com

**ATTORNEYS FOR PLAINTIFF**

/s/ *Matthew R. Korn*
Matthew R. Korn (By Special Appearance)
**FISHER & PHILIPS LLP**
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Phone: (803) 255-0000
Fax: (803) 255-0202
mkorn@fisherphillips.com

Lauren G. Goetzl (NC Bar No. 55939)
**FISHER PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Tel. (301) 951-1536
Fax (301) 880-5031
lgoetzl@fisherphillips.com
*Local Civil Rule 83.1(d) Counsel for Defendant*

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

A hereby certify that a copy of the foregoing document was electronically served on all counsel of record via the Court's CM/ECF system.

/s/ *Katherine Serrano*
**Katherine Serrano**