**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 4:22-cv-00046-D**

| | |
|---|---|
| **JEREMY SOUTHERLAND,** individually and on behalf of similarly situated persons, <br><br> Plaintiff, <br><br> **v.** <br><br> **PIRATE PIZZA, INC. and ALLEN LYLE,** <br><br> Defendants. | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT** |

Plaintiff Jeremy Southerland, individually and on behalf of similarly situated persons ("Plaintiff"), by and through the undersigned counsel, respectfully requests that this Court grant final approval of the Settlement and Release Agreement ("Agreement") [previously filed under seal as Dkt. #21] reached by the Parties to this action. The Agreement allows Settlement Class Members to participate in the settlement on a hybrid class and collective action basis, similar to the settlement structure that was previously approved by this Court in *Nooney v. Farrior Corp., et al.*, 5:21-cv-00146 (ED NC).[1] Under this structure, the Parties have enabled Settlement Class Members to claim settlement funds through the Settlement Administrator, without imposing additional burdens on this Court or the judicial system. Defendants Pirate Pizza, Inc. and Allen Lyle (collectively "Defendants") do not oppose Plaintiff's Motion or the relief requested herein for settlement purposes only.

---

[1] *See also Neira v. GoodFella's Pizza, Inc. et al.*, 1:19-cv-00280 (WD NC); *Moreno v. Prairie Pizza, Inc. et al.*, 3:19-cv-00532 (WD NC); *Chenkus v. Prairie Pizza, Inc.*, 3:17-cv-00723 (WD NC).

As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order in the attached proposed form:

(1) finally certifying the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only;

(2) granting final approval of the Agreement and adjudging its terms to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(3) finding that Defendants have complied with all their obligations pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA") with respect to this class action settlement;

(4) approving distribution of the Net Settlement Fund, as defined in the Agreement, to the Class Members;

(5) approving a service payment in the amount specified in the Agreement to Plaintiff Jeremy Southerland;

(6) approving payment of the actual costs of the Settlement Claims in the amount specified in the Declaration of Jeffrey D. Johnson;

(7) approving attorneys' fees and costs to Class Counsel[2] in an amount not to exceed one-third (1/3) of the Total Settlement Amount;

(8) permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against Defendants and the Released

_____

[2] The term "Class Counsel" refers to the attorneys who represent Plaintiff and the Settlement Class Members.

Error! Unknown document property name.

Parties (as defined in the Agreement) any and all of the Settlement Class Members'
Released Claims (as defined in the Agreement);

(9) permanently enjoining the Class Representative from prosecuting against Defendants
and the Released Parties any and all of the Class Representative's Released Claims (as
defined in the Agreement); and

(10)    entering a judgment dismissing this case with prejudice in accordance with the
terms of the Agreement.

## I.    <u>INTRODUCTION</u>

This class and collective action lawsuit alleging unpaid minimum wages against
Defendants was settled, subject to the Court's approval, following extensive negotiations between
the Parties. As a result of the Parties' evaluation of the claims, their extensive experience, and to
facilitate this settlement, the Parties stipulated to certification of the claims covered by the
settlement, pursuant to Federal Rule of Civil Procedure 23 and under Section 216(b) of the FLSA,
for settlement purposes only. On May 1, 2022, the Court granted the Parties' Joint Motion for
Preliminary Approval of Settlement Agreement. Pursuant to that Order (Dkt. #26), the Parties,
through the third-party administrator, sent the approved Notice of Class Action to all Settlement
Class Members, thereby notifying all Settlement Class Members of the date of the Fairness
Hearing, along with contact information to obtain additional information regarding the Fairness
Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice,
there are zero objections to the Agreement and zero requests for exclusion. Similarly, zero Delivery
Drivers or Class Members have requested to participate in the Fairness Hearing. *See generally*,
Declaration of Jeffrey D. Johnson, Vice President of CAC Services Group, LLC ("Johnson Decl.").

As this Motion and the relief requested is unopposed by Settlement Class Members and Defendants, the Court should grant Plaintiff's Motion.

## II.    <u>BACKGROUND</u>

Plaintiff filed this lawsuit ("the Litigation") on behalf of himself and similarly situated Delivery Drivers who were hired to deliver pizzas and other food and drinks for Defendants. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and North Carolina state laws by failing to pay him the lawful and applicable minimum wage because his expense reimbursements were purportedly insufficient to cover his automobile expenses while delivering pizzas for Defendants. Defendants denied, and continue to deny, Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and North Carolina state laws.

The Parties discussed disclosure of data needed to evaluate liability and damages. Accordingly, the Parties engaged in targeted early discovery that included the production of delivery driver mileage and reimbursement data for each store where Settlement Class Members were employed by Defendants. Defendants produced that data, which Plaintiff's counsel vetted, thoroughly reviewed, and analyzed through detailed spreadsheet calculations. Utilizing these calculations, Plaintiff concluded he had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair and arms-length settlement of this matter. The Parties explored the need for mediation, going so far as to schedule an in-person mediation with experienced mediator Michael Russel. However, based on the projected damage calculations, and in order to maximize available funds to the Settlement Class, the Parties instead negotiated extensively and were able to efficiently resolve the claims at issue without the need for mediation.

The terms of the Parties' settlement are set forth in the Parties' Agreement, previously filed under seal as Dkt. #19.

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable North Carolina state wage and hour laws. Defendants further contend that even if liability were established by Plaintiff, which they deny, they acted in good faith and that a two-year, as opposed to a three-year extended statute of limitations, should apply to Plaintiff's claims, and that liquidated damages should not be awarded. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes. If the Court were to accept these arguments, it would negate a substantial percentage, or all, of the alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendants outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendants during the maximum potentially applicable statutory periods. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law, falls well within the range of reasonableness, and is unopposed.

## III.  **THE TERMS OF THE AGREEMENT**

The Settlement Agreement defines the Settlement Class as:

> *All persons who worked as a delivery driver for Defendants between September 19, 2019, through April 18, 2022.*

The Agreement allowed all Delivery Drivers identified in the Settlement Class to participate in the Settlement, unless they timely filed a valid request for exclusion during the notice period, similar

to the settlement structure that was previously approved by this Court in *Nooney v. Farrior Corp. et al.*, 5:21-cv-00146 (WD NC).[3] To further ensure the finality of this litigation for all involved, the Agreement provides that all Settlement Class Members who did not submit a timely and valid request for exclusion will receive their *pro rata* share of the Net Settlement Fund. Following the distribution of Notice, zero objections to the settlement were filed and zero Settlement Class Members filed a request for exclusion. *See* Johnson Decl. This means that each Settlement Class Member will receive his or her proportionate share of the Net Settlement Fund.

Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement are as follows:

1. The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed that specified in the attached Declaration of Jeffery Johnson, Vice President of CAC Services Group, LLC;

2. As further detailed in ¶ E below, Plaintiff Southerland will receive the amount specified in the Agreement as a service award in recognition of the work involved and the benefits achieved by the Plaintiff;

3. As further detailed in ¶ D below, Class Counsel will receive the amount specified in the Agreement in attorneys' fees that equate to less than one-third (1/3) of the Total Settlement Amount and advanced litigation costs, subject to the amount available in the Administrative Fund after payment of the Settlement Claims Administrator;

4. All Settlement Class Members will receive their *pro rata* share of the Net Settlement Fund;

5. Any checks unclaimed after one hundred eighty (180) calendar days will be held in the Reserve Fund to be available for claimants and contingencies until April 18, 2025.

---

[3] *See also Neira v. GoodFella's Pizza, Inc. et al.*, 1:19-cv-00280 (WD NC).

## IV. THE COURT SHOULD APPROVE THE AGREEMENT

### A. The Settlement Meets the Standard for Approval of FLSA Settlements

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.,* 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

#### 1. The Parties Have a Bone Fide Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo v. Parsons Brinckerhoff, Inc.,* No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009) (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiff alleges that Defendants reimbursed their Delivery Drivers on a per-mile basis for use of their personal automobiles at a rate that resulted in payment of wages below the federal minimum wage. Defendants deny this allegation and maintain that they properly paid Delivery Drivers under the FLSA. Defendants contend that their reimbursement methodology reasonably approximated the vehicle expenses their Delivery Drivers incurred by using their personal vehicles. After evaluating the evidence, it is clear that significant factual and legal questions remain with respect to liability and damages under Plaintiff's theory of the case. Accordingly, the Court should decide that a *bona fide* dispute exists between the parties.

## 2. The Settlement is Fair and Reasonable

The Settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due, assuming FLSA violations had occurred, which Defendants deny. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g., Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

That the settlement is fair and reasonable is demonstrated by the following among other factors: 1) that Defendants would have vigorously contested the merits of Plaintiff's FLSA claims and state law claims, and the possibility that Plaintiff and the Settlement Class may not recover anything; 2) that Defendants contend the shorter two-year statute of limitations for non-willful violations of the FLSA would have been appropriate, which would significantly reduce – or eliminate – many Settlement Class Members' possible recovery, in large part because many eligible Delivery Drivers worked only during the third year and because a large number of miles were driven during the third year; 3) that Defendants contend liquidated damages would not be appropriate because Defendants acted in good faith at all times; and 4) that Defendants contend

that Plaintiff's claims are not appropriate for class or collective action treatment, except for settlement purposes. As further demonstrated below and for many of the same reasons, the Agreement is also reasonable, adequate, and fair under Rule 23's standards.

**B. The Settlement Meets the Requirements of Rule 23(e) for Settlement Purposes**

Federal Rule of Civil Procedure 23(e) provides that a class action can be settled only with court approval. "In approving proposed class action settlements pursuant to Federal Rule of Civil Procedure 23(e), courts generally employ a two-step approach." *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, *2 (E.D.N.C. Nov. 9, 2011) (internal citations omitted). "First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement . . . Second, after preliminary approval is granted and the class notified, the court holds a 'fairness' hearing, where all interested parties may be heard on the proposed settlement . . . After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id*. The Court has already granted preliminary approval. "The Fourth Circuit Court of Appeals applies a two-part test to determine whether a proposed settlement conforms to the requirements of Federal Rule of Civil Procedure 23(e) by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient." *Id*. at *3. While approval of a proposed class action settlement is a matter of discretion for the trial court, there is a "general principle that settlements are to be encouraged." *U.S. v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). In consideration of these factors, approval of the Settlement Agreement is warranted.

*1. The Proposed Settlement Was Honestly and Fairly Negotiated*

"In order to determine whether a proposed settlement is fair to the parties, courts in the Fourth Circuit consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the type of case at issue." *McLaurin*, 2011 WL 13146422 at *3 (citing *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations.

Here, the Parties are represented by counsel experienced in the type of wage and hour claims alleged in the action. *See* attached Declaration of Katherine Serrano. The Parties investigated the merits of the claims and Defendants' defenses and engaged in extensive negotiations guided by their respective experience. Prior to reaching a settlement, the Parties spent months debating Plaintiff's claims and exchanging informal discovery and information in order to evaluate the potential damages. Defendants produced all necessary class-wide data in order for Plaintiff to calculate class-wide potential damages, which Plaintiff shared with Defendants. The Parties extensively negotiated over the course of a couple of months before reaching an agreement as to the monetary terms of the settlement. Counsel continued to negotiate the full settlement terms at arms-length over the following weeks, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. Both Parties were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the extent of their negotiations.

As such, this Court should find the settlement was reached honestly and fairly between the Parties. *See In re Jiffy Lube*, 927 F.2d at 159 (affirming class action settlement as fair even though settled early in litigation prior to formal discovery because of the parties' informal discovery and

Error! Unknown document property name.

experience of counsel); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), cert. den., 424 U.S. 967 (1976) (the opinion and recommendation of experienced class counsel "should be given weight in evaluating the proposed settlement.").

### 2. *Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt*

Plaintiff believes that the claims are strong but recognizes that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that he would have prevailed in demonstrating that Settlement Class Members were not properly reimbursed for miles they incurred in their own vehicles on Defendants' behalf. Defendants, however, contend that they fully complied with applicable minimum wage requirements and believe numerous factors could preclude class-wide treatment. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides, as well as the continued costs and expense associated with litigation.

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period under the FLSA applies, or whether the two-year period for non-willful violations under the FLSA, or the two-year period under North Carolina's Wage and Hour Act would be applicable in this matter. Second, the Parties dispute whether this case could be tried on a class-wide basis. Finally, the Parties dispute the applicability of potential penalties, including liquidated damages. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this also weighs in favor of approval of the Settlement. *See* 4 Alba Conte & Herbert B. Newberg,

Newberg on Class Actions § 11.50 (4th ed. 2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.")

### 3. The Class Recovery is Adequate

Approval of the settlement is appropriate in light of the adequacy factors: (1) the relative strength of the Plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the Plaintiff is likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; and (4) the solvency of the Defendants and the likelihood of recovery on a litigated judgment. *See In re Jiffy Lube*, 927 F.2d at 159.

Under the Settlement, Settlement Class Members will receive individual payments calculated based on the available records documenting the miles actually driven by them. The allocation model also ensures each Settlement Class Member receives a fair and adequate amount based on the available records documenting the miles actually driven by them in relation to the Settlement Class. Moreover, because no Settlement Class Member requested exclusion, each Settlement Class Member will receive their *pro rata* share of the Settlement.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. The Parties would each need to hire experts to review the voluminous records of reimbursements and expenses incurred by class members driving numerous different models of cars. These experts will then need to opine as to what the "reasonable" reimbursement rate is for class members. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, experts and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation could result in no recovery for Settlement Class Members or a significant

judgment against Defendants which could bankrupt them, leaving nothing for the Settlement Class Members to recover. Moreover, Defendants sold their stores in April 2022, making recovery less certain for the Settlement Class. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be preliminarily approved.

## C. The Settlement Meets the Requirements of Rule 23(b)(3) for Settlement Purposes

As previously set forth at the preliminary approval stage, Plaintiff asserts that certification is proper under Rule 23 for settlement purposes.[4] Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court should determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1. *Predominance*

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation. *Id*. As explained above, Plaintiff asserts that the common nucleus of facts in the present case derives from the alleged practices that excluded certain incurred expenses from the Plaintiff's reimbursement. Plaintiff alleges that the Settlement Class Members would be entitled to the same legal remedies. Accordingly, class certification for settlement purposes to effectuate the Settlement Agreement is proper.

---

[4] For purposes of settlement only, Defendants have agreed not to contest Rule 23 class certification. However, Defendants do not waive, and expressly reserve, any defenses or denials that class certification is proper in this case should the Court not approve the settlement, or the settlement not be perfected.

Additionally, Plaintiff contends that class certification in this case serves the judicial economy function of Rule 23 class actions.

### 2. *Superiority*

Plaintiff alleges that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. A class action is the superior method for managing litigation if no realistic alternative exists. *Valentino v.Carter-Wallace, Inc*., 97 F.3d 1227, 1234-1235 (9th Cir. 1996). Plaintiff asserts that the alternative method of resolution could be 200, or more, individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class Members have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to decide whether to take part in the litigation or not.

Plaintiff believes that concentrating the litigation of the claims in this and one particular forum would be the most efficient manner or adjudicating all of the claims of the Settlement Class. For purposes of final approval of the Settlement Agreement, there is no reason why concentrating the litigation in this Court would be undesirable.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement

agreement. *See Amchem*, 521 U.S. at 620 (1997). In light of these considerations, certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

### D. Attorneys' Fees and Costs Provided in the Settlement are Appropriate

Class Counsel is entitled to recover attorney's fees and costs under the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. Moreover, even in the absence of a statutory entitlement to attorney's fees and costs, Class Counsel is entitled to a fee/cost award under the equitable common fund doctrine, which entitles a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client to reasonable attorney's fees from the fund as a whole. *Boeing Co. v. Gemert*, 444 U.S. 472, 478 (1980).

Courts in the Fourth Circuit have discretion to calculate awards of attorneys' fees by using either a lodestar/multiplier approach or a percentage of the fund calculation. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). When reviewing awards of attorney's fees it is only necessary that the award "be reasonable under the circumstances." *In re Dollar Gen. Stores FLSA Litig.*, 5:09-MD-1500, 2011 WL 3904609, at *3 (E.D.N.C. Aug. 23, 2011); *Jacksonville Prof'l Fire Fighters Ass'n Local 2961, IAFF v. City of Jacksonville*, 685 F. Supp. 513, 526 (E.D.N.C. 1987).

#### 1. The Requested Attorneys' Fees Should Be Approved as Reasonable When Viewed as A Percentage of the Total Settlement Fund

"In class action cases, counsel who recover a common fund settlement . . . are entitled to reasonable attorney's fees paid from the fund." *Mehling v. New York Life Ins. Co*., 248 F.R.D. 455, 464 (E.D.Pa. 2008). Judge Posner, in a case addressing class counsel's entitlement to fees from a common settlement fund, has cogently summarized the equitable and economic principles underlying class counsel's entitlement to a fair fee:

The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible. It is infeasible in a class action because no member of the class has a sufficient stake to drive a hard – or any – bargain with the lawyer. So the judge has to step in and play surrogate client.

\*\*\*

The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $ 45 million. What would its lawyers have gotten pursuant to their contingent fee contract? We know that in personal-injury suits the usual range for contingent fees is between 33 and 50 percent but we also know that in large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered – it might be 33 percent of the first million, 25 percent of the next million, and so on down. The class counsel did not present and the judge did not ask for testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit. Yet it might be quicker and easier to generate such evidence than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth.

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992).

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted); *see also, Brundle on behalf of Constellis Employee Stock Ownership Plan v.*

*Wilmington Trust, N.A.,* 919 F.3d 763, 2019 Employee Benefits Cas. (BNA) 97998 (4th Cir. 2019) (recognizing that the employee that benefits from a lawsuit without contributing to its costs, would be unjustly enriched at the successful lawyer's expense).

Here, application of the percentage of recovery method supports Class Counsel's request. The Settlement allocates fees and costs of one-third (1/3) of the Total Settlement Amount.[5] This percentage recovery falls well within the range that is regularly approved by courts, including in analogous pizza delivery driver cases. *See Nooney v. Farrior Corp., et al*, Case No. 5:21-cv-00146 (ED NC) (33%); *Neira v. GoodFella's Pizza, Inc. et al*., 1:19-cv-00280 (WD NC) (33%); *Moreno v. Prairie Pizza, Inc. et al*., 3:19-cv-00532 (WD NC) (33%); *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D. NC) (33.3%). *Otis v. TAH Pizza, Inc. et al dba Domino's*, 2:18-cv-00111-HSM-MCLC (ED TN) (40%). Application of the "percentage of recovery" method supports Class Counsel's requested fee recovery.

### 2. The Requested Fee Should Also Be Approved as Reasonable in Light of Additional Factors

#### a. The Value of the Benefit Rendered to the Plaintiff Class

The settlement represents a significant recovery on behalf of the class. Had Defendants successfully opposed a motion for class certification on behalf of Plaintiff, this case would only have proceeded on behalf of significantly fewer individuals. If the settlement is approved by the Court, all Settlement Class Members will receive compensation. Thus, the "value of the benefit rendered to the plaintiff class" factor supports the proposed fee award.

#### b. The Value of Service on an Hourly Basis

---

[5] After deducting advanced litigation costs, Plaintiff's request for attorney's fees equates to only 31% of the Total Settlement Fund.

Collective and class action litigation is time consuming and requires a substantial commitment of time and resources, including advancing all litigation costs. Class Counsel also accepted this case on a contingency basis with no guarantee of payment. Despite receiving no payment for their work to date in this case and even when no accounting is done for time to be incurred throughout the settlement distribution, Class Counsel's lodestar crosscheck is fully supported and already well within the range of reasonableness.[6] *Fangman v. Genuine Title, LLC*, CV RDB-14-0081, 2017 WL 2591525, at *6 (D. Md. June 15, 2017) (lodestar multipliers up to 4.5 reasonable).

### c. Whether the Services Were Undertaken on a Contingency Fee Basis

Class Counsel represented Plaintiff on a contingency fee basis. If Plaintiff did not ultimately prevail, Class Counsel would have not recovered any of the incurred fees and out-of-pocket costs. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Many lower wage workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Also, "[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts." *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, *6 (D. Colo., November 13, 2013). In sum, the risk associated with the contingency

---

[6] The fee request / hours incurred to date / Counsel's recently-approved hourly rate is approximately .80

fee arrangement here augurs for Court approval of the fee award sought. See *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.").

### d. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

Courts have recognized that "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, *14 (S.D. Ohio, June 24, 2011). Additionally, the remedial nature of the FLSA relies on attorney representation for low wage workers like the pizza delivery drivers involved here. Without enforcement of the FLSA's attorneys' fees provision through cases – and motions – like this one, many workers would be left without recourse.

### e. The Complexity of the Litigation

Two of the fundamental questions in this case were: (i) whether Plaintiff was entitled to and did in fact receive reimbursement of expenses at the optional IRS standard business mileage rate, or whether Defendants were entitled to and did in fact reimburse drivers a reasonable approximation of their vehicle expenses; and (ii) whether these questions could be resolved on a class or collective action basis. Analysis of these questions and effective prosecution of the class claim required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA and Federal Rule of Civil Procedure 23, which is uniquely possessed by the collective backgrounds of Plaintiff's counsel. *See* Katherine Serrano Declaration. In sum, the complexity of the litigation supports the proposed fee award.

### f. The Professional Skill and Standing of Counsel

Employee minimum wage rights cases are governed by a highly technical and specialized set of state and federal wage statutes and regulations. Class Counsel's practice is focused in this highly technical area and Counsel has litigated numerous class cases, including those brought on behalf of other pizza delivery drivers advanced under related state laws and the FLSA. *See* Katherine Serrano Declaration. Class Counsel had the requisite skill to perform the legal service required in this complex litigation. Class Counsel's experience is demonstrated by the excellent and highly efficient result obtained for the Class in this case. Thus, the professional skill and standing of Class Counsel supports the requested fee award.

### E. Named Plaintiff Deserves a Service Payment

Services payments "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Dorn v. Eddington Sec., Inc.*, 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) ($10,000.00 award); *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D. NC) ($7,500.00); *Marnoch and Breit v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.) (same). The modest service payment sought for Mr. Southerland should not only be approved because it is within the limits of awards approved in various districts and related cases, but also because he substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. *See* Katherine Serrano Declaration. He was responsible for providing guidance and assistance on numerous occasions to Plaintiff's Counsel. Mr. Southerland also participated in the settlement process. Therein, Mr. Southerland advocated for all of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been

Error! Unknown document property name.

achieved. *See* Katherine Serrano Declaration. Therefore, payment of a service award, as agreed by the Parties, is justified.

## V.     <u>CONCLUSION</u>

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation. For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement.

Respectfully Submitted,

*/s/ Katherine Serrano*
**Katherine Serrano***
Texas Bar No. 24087532
Forester Haynie PLLC
400 N St Paul St, Ste 700
Dallas, Texas 75201
(214) 210-2100 phone
(214) 346-5909 fax
kserrano@foresterhaynie.com
**Special appearance entered*

**Jacob J. Modla**
N.C Bar. ID No: 17534
The Law Offices of Jason E. Taylor
454 South Anderson Rd., #303
Rock Hill, SC 29730
T: 803-328-0898
 E-Mail: jmodla@jasonetaylor.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed. Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

/s/ Katherine Serrano
**Katherine Serrano**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Plaintiff conferred with Defense counsel, who advised that Defendants do not oppose the relief sought herein.

/s/ Katherine Serrano
**Katherine Serrano**